(597 P.2d 1125)

No. 49,981

LAVILLE HANNON, *Appellant,* v. RAYMOND MAYNARD, *et al.,*
*Appellees.*

Opinion filed July 20, 1979.

Michael F. Willcott and Patrick J. Hurley, of Leavenworth, for the appellant.

Roger N. Walter, Assistant Attorney General, and Curt T. Schneider, Attorney General, for the appellees.

Before PARKS, P.J., ABBOTT and SWINEHART, JJ.

PARKS, J.: This is an appeal from the district court's denial of habeas corpus relief pursuant to K.S.A. 60-1501 et seq.

Following his conviction of first degree murder in 1960, Hannon was committed to Kansas State Penitentiary pursuant to a life sentence imposed by the district court of Wyandotte County. In 1975, Hannon first appeared before the Kansas Adult Authority (KAA) for parole consideration, having completed 15 years of his sentence (see K.S.A. 22-3717). The KAA placed Hannon on a "continued" status following a hearing at which Hannon appeared personally. On October 11, 1975, Hannon was placed in

administrative segregation in the Adjustment and Treatment Building (A&T) following an alleged assault upon a prison guard.

On December 5, 1975, Hannon pleaded guilty to a charge of aggravated battery and was sentenced to a one-to-twenty-year term by the district court of Leavenworth County, to run consecutively to his life sentence. Testimony in the present action established that the "new" sentence has been fully absorbed in the original life sentence and that Hannon's minimum and maximum sentences are both "life" for the purposes of parole eligibility. Early in 1976, the KAA again considered Hannon for parole but passed him to "parole eligibility," thus requiring certification of parole eligibility by the institution prior to further consideration by the KAA.

On March 22, 1976, Hannon, pro se, filed this habeas corpus action alleging both that his continued incarceration in A&T violated his constitutional rights under the 5th, 8th, and 14th Amendments, and that the handling of his parole consideration violated his rights under the 5th and 14th Amendments. Evidentiary hearings were held on July 1 and November 17, 1976, before the district court of Leavenworth County. In a memorandum opinion filed January 6, 1977, the district court concluded that Hannon's petition was without merit and denied relief, with this appeal following. In August 1977, Hannon was transferred to the Missouri State Penitentiary, where he is currently confined, pursuant to the Interstate Corrections Compact. K.S.A. 76-3001 *et seq.*

Appellees deny that any error occurred in the district court proceedings and argue that the issues raised by Hannon are moot in view of his transfer to Missouri.

The general rule is that appellate courts do not decide moot questions or render advisory opinions. *In re Browning,* 1 Kan. App. 2d 652, Syl. ¶ 1, 573 P.2d 1095 (1977). The mootness doctrine is one of court policy (*Knowles v. State Board of Education,* 219 Kan. 271, Syl. ¶ 2, 547 P.2d 699 [1976]). This policy recognizes that it is the function of a judicial tribunal to determine real controversies relative to the legal rights of persons and property which are actually involved in the particular case properly brought before it, and to adjudicate those rights in such manner that the determination will be operative, final and conclusive. 1 C.J.S., Actions § 17. The present situation is distin-

guishable from a class action where the representative inmate is transferred (*Beaver v. Chaffee*, 2 Kan. App. 2d 364, Syl. ¶ 7, 579 P.2d 1217 [1978]), or a case where an inmate is transferred to a second prison where the conditions of which he initially complained also exist. See *Rhem v. Malcolm*, 389 F. Supp. 964 (S.D.N.Y. 1975). We note that in view of Hannon's commitment in another state, the "physical presence" requirement of K.S.A. 60-1501 is lacking, leaving nothing upon which this court's judgment might act. *Guerrero v. Capitol Federal Savings & Loan Ass'n*, 197 Kan. 18, 22, 415 P.2d 257 (1966). Accordingly, we conclude that Hannon's argument concerning his confinement in A&T is moot.

We now turn our attention to Hannon's parole claim. The Interstate Corrections Compact, K.S.A. 76-3001 *et seq.*, allows for the detention of inmates in other compact states by way of contractual agreement. The provisions pertinent to this case are K.S.A. 76-3002, Article IV (c) and (f), which provide:

"(c) *Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom* for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, *for release on probation or parole,* for discharge, *or for any other purpose permitted by the laws of the sending state;* provided that the sending state shall continue to be obligated to such payments as may be required pursuant to the terms of any contract entered into under the terms of article III.

. . . .

"(f) *Any hearing or hearings to which an inmate confined pursuant to this compact may be entitled by the laws of the sending state may be had before the appropriate authorities of the sending state,* or of the receiving state if authorized by the sending state. The receiving state shall provide adequate facilities for such hearings as may be conducted by the appropriate officials of a sending state. In the event such hearing or hearings are had before officials of the receiving state, the governing law shall be that of the sending state and a record of the hearing or hearings as prescribed by the sending state shall be made. Said record together with any recommendations of the hearing officials shall be transmitted forthwith to the official or officials before whom the hearing would have been had if it had taken place in the sending state. *In any and all proceedings had pursuant to the provisions of this subdivision, the officials of the receiving state shall act solely as agents of the sending state and no final determination shall be made in any matter except by the appropriate officials of the sending state."* (Emphasis added.)

It is clear from these and other provisions of K.S.A. 76-3002 that Kansas officials retain the power to grant parole to a transferred inmate. Similar provisions appear in Department of Corrections

Regulations, Vol. 1, § 44-2-102. The net result is that a transferred inmate will face the same parole procedures and authorities as a Kansas-housed inmate; therefore, Hannon's parole issue is not moot.

Hannon argues that he was denied due process of law in the method of his parole consideration, primarily focusing on the role the prison officials played in such consideration, where he maintains their actions were arbitrary and capricious. The record clearly shows that Hannon appeared personally before the KAA in September 1975 and was "continued" for lack of an adequate parole plan. Hannon's case was reviewed by the KAA again in January and February 1976, and was passed to "parole eligibility." The KAA recommended that Hannon cooperate with the institutional staff and participate in programs recommended by his unit team. The effect of the latter determination was to vest the prison administration with the responsibility of certifying Hannon to the KAA as a condition precedent to further consideration. Testimony of Deputy Director Atkins and Lt. Lynch indicated that the staff decided to delegate such responsibility to the Program Management Committee, which consisted of the deputy director, the deputy director of operations, and a mental health staff member. Atkins' testimony indicates that the committee had not set a projected date for Hannon's parole eligibility due to his past conduct and poor attitude. Atkins also testified that the committee would review Hannon's case on a regular basis.

Hannon's due process argument is answered by the recent U.S. Supreme Court decision in *Greenholtz v. Nebraska Penal Inmates,* _____ U.S. _____, 60 L.Ed.2d 668, 99 S.Ct. 2100 (1979). In *Greenholtz,* the court held there is no constitutional due process protection which automatically attaches to the grant of parole. The court went on to state that a state may create a constitutionally protectable interest in the grant of parole, but concluded that the "Nebraska procedure affords an opportunity to be heard and when  parole is denied it informs the inmate in what respects he falls short of qualifying for parole; this affords the process that is due under these circumstances. The Constitution does not require more." _____ U.S. _____.

Here the record indicates that Hannon was given reasons for his parole denial after a hearing before the KAA. We have compared the Nebraska procedure outlined in *Greenholtz* with K.S.A.

22-3717, and conclude that no greater protections are required by our statutes. In view of the *Greenholtz* decision, Hannon's due process claim must fail.

Affirmed.