(95 P.3d 99)

No. 90,000 ■

PATRICK C. LYNN, *Appellant*, v. CHARLES SIMMONS and THE KANSAS DEPT. OF CORRECTIONS, *Appellees*.

Opinion filed November 21, 2003.

*Patrick C. Lynn*, appellant pro se.

*Linden G. Appel*, of Kansas Department of Corrections, for appellee.

Before PIERRON, P.J., GREENE, J., and JONES, S.J.

GREENE, J.: Patrick C. Lynn appeals the district court's refusal to permit the filing of his petition for writ of mandamus, which complained of a retaliatory transfer to Oklahoma. We affirm.

*Factual and Procedural Overview*

Patrick C. Lynn was convicted of aggravated burglary, aggravated kidnapping, rape, and aggravated criminal sodomy. On appeal, his convictions were affirmed, but his sentences were vacated and the case remanded for resentencing. See *State v. Lynn*, Case No. 78,565, unpublished opinion filed March 24, 2000, *rev. denied* 269 Kan. 938 (2000). Lynn was subsequently resentenced, and those sentences were affirmed on appeal. See *State v. Lynn*, Case No. 86,942, unpublished opinion filed March 21, 2003, *rev. granted* September 24, 2003 ■

In August 2002, Lynn filed his "Petition For Writ of Mandamus" against Charles Simmons and the Kansas Department of Corrections (KDOC) in the district court of Shawnee County. Lynn stated he was serving an illegal sentence in the custody of the KDOC and had been involuntarily transferred without notice to the Oklahoma Department of Corrections (ODOC).

Lynn claimed the KDOC transferred him "in retaliation for past, pending, and forthcoming litigation, and other exercises of his 1st Amendment activities" with the intention to silence or prejudice him. He listed 11 cases that he had filed against state entities and personnel in various state and federal courts. Lynn stated he had also filed more than 50 prison grievances in the past 12 months and assisted a dozen prisoners with their litigation.

Lynn stated that a mandamus action was appropriate because the KDOC could not retaliate against a prisoner who exercised his or her First Amendment rights or right of access to the courts, and he could not meet the " 'physical presence' " requirement for filing a habeas corpus petition under K.S.A. 2002 Supp. 60-1501 as set forth in *Hannon v. Maynard*, 3 Kan. App. 2d 522, Syl. ¶ 2, 597 P.2d 1125 (1979). Lynn requested the KDOC be ordered to immediately return him to Kansas.

After the State filed its answer and asserted numerous defenses including failure to exhaust administrative remedies, Lynn filed a

"Rebuttal" pleading, arguing that exhaustion of his administrative remedies with the KDOC would be an act of futility. Lynn explained that the personnel who would decide his KDOC grievance had a personal interest as he had sued them and that litigation was still pending.

The district court concluded that Lynn's petition had no merit. Specifically, the court refused to permit the filing because: (i) Lynn had not exhausted his administrative remedies with the KDOC; and (ii) mandamus was inappropriate to challenge the KDOC's discretionary decision to transfer a prisoner to another state. Accordingly, the court expressly prohibited Lynn from filing his petition. This prohibition was exercised pursuant to the injunction against Lynn in Case No. 97 C 6900, which included in relevant part a provision that the court review any petition proposed for filing by Lynn in any Kansas court for a determination whether the petition is lacking in merit, is duplicative, or is frivolous.

Ten days after the file-stamped date on the district court's decision, Lynn filed his KDOC grievance complaining about the transfer to Oklahoma. Lynn timely appeals the district court decision and requests that we review the district court's action in prohibiting the filing of his petition.

*Standard of Review*

Whether a party is required to or has failed to exhaust administrative remedies is a question of law, and our review is unlimited. *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 622-23, 24 P.3d 128 (2001). Whether mandamus lies is dependent upon an interpretation of the applicable procedural and substantive statutes, over which this court has unlimited review. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003).

*The District Court Did Not Err in Finding that Lynn Had Not Exhausted Administrative Remedies*

K.S.A. 75-52,138 provides:

"Any inmate in the custody of the secretary of corrections or in a county jail, prior to filing any civil action naming the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary of corrections, the warden, the sheriff, or an employee of the department of corrections or the county, while

such employee is engaged in the performance of such employee's duty, as the defendant pursuant to the rules of civil procedure, shall have exhausted such inmate's administrative remedies, established by the rules and regulations promulgated by the secretary of corrections or by county resolutions, concerning such civil action. Upon filing a petition in a civil action, such inmate shall file with such petition proof that the administrative remedies have been exhausted."

The Secretary of the KDOC is authorized to adopt rules and regulations regarding the prisons. See K.S.A. 75-5210(f)-(g); K.S.A. 75-5251. The KDOC grievance procedure for inmates is set forth in K.A.R. 44-15-101 *et seq.* An inmate is required to file a formal grievance form. See K.A.R. 44-15-101(b); K.A.R. 44-15-102. The KDOC grievance procedure applies to complaints "regarding policies and conditions within the jurisdiction of the institution or the department of corrections," and "[a]ctions by employees and inmates, and incidents occurring within the institution." K.A.R. 44-15-101a(d)(1)(A), (B).

Lynn contends the KDOC effectively "slammed the door shut" to the administrative grievance procedure when it transferred him to the ODOC. He argues he was not required to exhaust because he was not "within the jurisdiction of the facility or the department of corrections" as required under K.A.R. 44-15-101a(d)(1)(A), (B).

Lynn has cited *Hannon*, 3 Kan. App. 2d 522, Syl. ¶ 2, as support for his position that his confinement at the ODOC does not require exhaustion of administrative remedies. We find *Hannon* inapplicable, however, because it addressed a civil action pursuant to K.S.A. 2002 Supp. 60-1501 and turned on the express "physical presence" requirement of that statute. Moreover, *Hannon* addressed mootness, not exhaustion of administrative remedies.

The critical factor is that Lynn is serving a Kansas sentence. He was convicted in Kansas of several felonies and sentenced to imprisonment. Felony sentences are served in the custody of the Secretary of the Department of Corrections who has the authority to supervise and manage correctional institutions and designate the place of the inmate's confinement. See K.S.A. 21-4609; K.S.A. 75-5202(d); K.S.A. 75-5205(a); K.S.A. 2002 Supp. 75-5206; K.S.A. 2002 Supp. 75-5218.

Moreover, under the Interstate Corrections Compact, K.S.A. 76-3001 *et seq.* (the ICC), inmates confined in another state "shall at all times be subject to the jurisdiction of the sending state." K.S.A. 76-3002, Article IV(c). Further, "confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." K.S.A. 76-3002, Article IV(e). Lynn's confinement in the ODOC did not cut off the administrative grievance procedure for any of his civil claims against the KDOC.

Lynn next contends exhaustion of his administrative remedies is a futile act because the KDOC official who will decide his grievance is biased. According to Lynn, the KDOC official who reviews inmate grievances is the same person who acts as the ICC coordinator and Lynn has sued that person in other pending litigation. For those reasons, Lynn claims he cannot receive an impartial decision for any grievance, which violates his due process rights.

K.S.A. 75-52,138 does not set out a grievance procedure, but requires an inmate to follow the grievance procedure established by the KDOC. The KDOC regulations allow each inmate to file a grievance, see K.A.R. 44-15-101(g), regarding its policies and conditions and actions by employees and other inmates. See K.A.R. 44-15-101a(d). Remedies include action by the prison director or the Secretary of KDOC to have the problem corrected or to remedy an objectionable condition or to change an institution policy or practice. K.A.R. 44-15-101a(e). The regulations also address possible bias. "Any inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance." K.A.R. 44-15-101a(f). We decline to find that the administrative grievance procedure was legally inadequate.

Lynn next argues the Kansas Constitution grants exclusive jurisdiction to the district court for all civil matters and K.S.A. 75-52,138 divests that jurisdiction from an administrative agency. He asks this court to follow *Pope v. State*, 792 So. 2d 713, *reh. denied* (La. 2001), and declare K.S.A. 75-52,138 unconstitutional. At the outset, we note that the Louisiana constitutional language in *Pope* differs significantly from the Kansas language in Article 3, § 1. In Louisiana, the constitution vests "original jurisdiction" in courts,

whereas the Kansas Constitution merely vests "judicial power" "exclusively" in our courts. Our Supreme Court has held that the term "exclusively" in Article 3, § 1 was never intended to prevent the legislature from conferring quasi-judicial powers on administrative agencies when necessary to enable them to carry out their functions. *Behrmann v. Public Employees Relations Board*, 225 Kan. 435, 443, 591 P.2d 173 (1979). Moreover, exhaustion of administrative remedies in such quasi-judicial bodies is a fundamental and well-established legal precept, grounded in both statutory and common law. See, *e.g.*, K.S.A. 77-612; *Pecenka v. Alquest*, 232 Kan. 97, 652 P.2d 679 (1982); *Stephens v. Unified School District*, 218 Kan. 220, 546 P.2d 197 (1975). Lynn's challenge to the constitutionality of K.S.A. 75-52,138 is rejected.

Having carefully considered Lynn's arguments in support of error, we conclude that the district court did not err in finding Lynn's action barred due to failure to exhaust his administrative remedies, and we affirm as to this issue.

*The District Court Did Not Err in Concluding That Mandamus Was Inappropriate*

Although our resolution of the procedural issue should be sufficient to affirm the district court's prohibition to file Lynn's petition, we find it in the interest of judicial economy to address the remaining issue within the framework of this appeal. The second issue framed is whether mandamus was appropriate for Lynn's complaints.

Mandamus is defined as "a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law." K.S.A. 60-801. The Kansas Supreme Court has explained

" 'that the remedy of mandamus is available only for the purpose of compelling the performance of a clearly defined duty; that its purpose is to require one to whom the writ or order is issued to perform some act which the law specifically enjoins as a duty resulting from an office, trust, or station; *that mandamus may not be invoked to control discretion* and neither does it lie to enforce a right which·is in substantial dispute, and further, that resort to the remedy may be had

only when the party invoking it is clearly entitled to the order which he seeks.' " (Emphasis added.) *Arney v. Director, Kansas State Penitentiary*, 234 Kan. 257, 260-61, 671 P.2d 559 (1983).

Discretionary acts are defined "as those acts wherein there is no hard and fast rule as to course of conduct that one must or must not take and, if there is a clearly defined rule, such would eliminate discretion." *Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 321, 757 P.2d 272 (1988).

Here, the district court determined that the ICC gave the KDOC discretion in deciding whether to transfer an inmate to another state prison. The pertinent provisions of the ICC are:

"(a) Whenever the duly constituted authorities in a state party to this compact, and which has entered into a contract pursuant to article III, shall decide that confinement in, or transfer of an inmate to, an institution within the territory of another party state is necessary or desirable in order to provide adequate quarters and care or an appropriate program of rehabilitation or treatment, said officials may direct that the confinement be within an institution within the territory of said other party state, the receiving state to act in that regard solely as agent for the sending state.

. . . .

"(c) Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state and may at any time be removed therefrom for transfer to a prison or other institution within the sending state, for transfer to another institution in which the sending state may have a contractual or other right to confine inmates, for release on probation or parole, for discharge, or for any other purpose permitted by the laws of the sending state." K.S.A. 76-3002, Article IV.

K.S.A. 76-3003 authorizes the Secretary of Corrections "to do all things necessary or incidental to the carrying out of the compact in every particular and he or she may in his discretion delegate this authority to a deputy secretary or other appropriate official." K.S.A. 2002 Supp. 75-5206(a) further provides "the secretary shall have authority to order the housing and confinement of any person sentenced to the secretary's custody to any institution or facility herein placed under the secretary's supervision and management or to any contract facility, including a conservation camp."

These statutory provisions utilize broad language for interstate prison transfers and impose no conditions or standards that restrict

the KDOC's discretion to transfer an inmate to another compact state. There are no KDOC regulations governing interstate transfers. See K.A.R. 44-1 through 44-16. We conclude that the act of transferring an inmate to, or returning an inmate from, an interstate prison is not a legally specified duty that is properly the subject of a mandamus action.

In his reply brief, Lynn disagrees that these statutes control. He claims he has a protected due process interest under K.S.A. 75-5201 and K.A.R. 44-15-104(a). According to Lynn, that protected right was violated by the KDOC when it transferred him to the ODOC in retaliation for exercising his First Amendment rights and his constitutional right of access to the courts. Lynn's argument misses the point—the issue in a mandamus action is whether the KDOC had a specified legal duty to perform an act, not whether an inmate has legal cause of action for a constitutional violation.

The United States Supreme Court addressed interstate prison transfers and due process rights in *Olim v. Wakinekona*, 461 U.S. 238, 75 L. Ed. 2d 813, 103 S. Ct. 1741 (1983). The Court in *Wakinekona* rejected "a holding that '*any* substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause'" because it "'would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.'" 461 U.S. at 245. The Court held that an inmate had no justifiable expectation that he or she would be incarcerated in any particular state. 461 U.S. at 244-45. The Court concluded an interstate transfer did not deprive an inmate of any liberty interest protected by the Due Process Clause. 461 U.S. at 248.

We embrace the rationale and holding of *Wakinekona* in concluding that Lynn had no protected liberty interest to remain in a Kansas prison.

The district court did not err in holding that mandamus does not lie for the discretionary act of interstate prison transfer.

Affirmed.