NOT DESIGNATED FOR PUBLICATION

No. 116,269

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY SPERRY,
*Appellant*,

v.

LANSING CORRECTIONAL FACILITY,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed April 28, 2017. Affirmed.

*Jeffrey J. Sperry*, pro se appellant.

*Sherri Price*, special assistant attorney general, of Lansing Correctional Facility, for appellee.

Before STANDRIDGE, P.J., MCANANY, J., and HEBERT, S.J.

*Per Curiam*:  Jeffrey J. Sperry appeals from an order of the district court denying his pro se petition in which he sought an order of mandamus and other relief against Lansing Correctional Facility (LCF). His claims were based on his inmate classification as "other security risk," which resulted in administrative segregation.

We find that Sperry has not established his claims for relief, and we affirm the judgment and order of the district court.

1

*Factual and Procedural Background*

On Friday, October 30, 2015, Correctional Officer Wildermuth wrote an Administrative Segregation Report (ASR) classifying Sperry as an "other security risk" under Internal Management Policy and Procedure (IMPP) 20-104 I.B.13. That IMPP states as follows:

> "13. Other security risk.
> a. The warden may place in administrative segregation, or secure confinement in the inmate's own cell, any inmate or group of inmates if the inmate or inmate's [*sic*] have engaged in behavior which has threatened the maintenance of security or control in the correctional facility.
> (1) The warden shall, within three working days of the placement, explain, in writing, the threat to security and show justification for effecting either segregation or secure confinement under these circumstances.
> (2) A copy of this explanation and justification shall be provided to the Secretary of Corrections." IMPP 20-104 I.B.13.a.

The ASR set forth in detail that Sperry had repeatedly been issued numerous disciplinary reports and had previously been placed in segregation. A change in status to "other security risk" was recommended based on "Sperry's malicious and maladaptive behavior." The warden signed the ASR on Tuesday, November 3, 2015. Sperry received the ASR on Wednesday, November 4, 2015.

On November 4, 2015, Sperry delivered a Form 9 to Officer Wildermuth, alleging that the ASR was full of falsehoods. On the same day, Sperry had a Form 9 delivered to Warden Pryor, alleging that he was being held in administrative segregation illegally, and asking to be released. Between November 5 and November 11, 2015, Sperry wrote three additional requests to Warden Pryor; one to the Enforcement, Apprehensions and Investigations Unit; and one to Sherri Price, the staff attorney.

2

On January 6, 2016, Sperry filed a petition against LCF asking for a court order "dissolving the illegal 'Other Security Risk' classification, enjoining prison officials from any further interference with petitioner's access to the courts, and enjoining specific staff members from exercising any further authority over [him]." On March 8, 2016, LCF filed a motion to dismiss the matter because the prison does not have capacity to sue or be sued, and alleging Sperry had not provided any evidence that he had exhausted administrative remedies.

On April 8, 2016, Sperry filed a motion to quash the prison's motion to dismiss, claiming it was frivolous and explaining that he failed to include evidence of exhaustion because officers were "refusing to make petitioner's legal copies, and were playing games with his legal materials." Additionally, he claimed that the prison's attorney "knowingly made false and misleading assertions for the purpose of misleading the court, hindering petitioner's litigation, prolonging petitioner's suffering, and general vexation of petitioner." Sperry included the Form 9 documents described above as evidence that he had exhausted his administrative remedies.

A hearing on Sperry's mandamus petition was held on April 21, 2016, and the judge issued his order denying the petition on May 19, 2016. The judge found that classification and segregation of an inmate are discretionary acts, the appropriate avenue for relief was a K.S.A. 60-1501 action, and that LCF is not an entity subject to suit. On June 10, 2016, Sperry filed his notice of appeal from that order.

*The district court did not err in denying Sperry's petition for mandamus.*

On appeal, Sperry argues that the district court judge erred in dismissing his petition for writ of mandamus. LCF responds that it cannot be sued, classifying Sperry as an other security risk is discretionary, and other avenues for relief were available since

3

Sperry could have brought an action under K.S.A. 60-1501 instead of an action for mandamus.

### A. LCF May be Subject to Mandamus Action

LCF first argues that it is not subject to suit because a line of cases has held that subordinate government agencies do not have the capacity to sue or be sued without express legislative authority. LCF relies on *Corder v. Kansas Bd. of Healing Arts*, 256 Kan. 638, 665, 889 P.2d 1127 (1994), and *Hopkins v. State*, 237 Kan. 601, 606, 702 P.2d 311 (1985).

In *Corder*, a doctor brought a petition for mandamus seeking a hearing and damages under the Kansas mandamus statute. On appeal, the court determined that the trial court properly ordered a hearing according to the mandamus action but that monetary damages were not warranted. 256 Kan. at 661. The court also determined that the Board could not be sued under the Kansas Tort Claims Act because it is a subordinate agency without legislative authority to sue or be sued—the portion LCF argues protects it in this case. 256 Kan. at 663-64.

Similarly, in *Hopkins*, the Kansas Highway Patrol was sued under the Kansas Tort Claims Act. The appellate court held the trial court correctly dismissed the suit because the Patrol had not been given legislative authority to sue or be sued. The basis for these decisions is the general rule "that a state (sovereign) cannot be sued without its consent. No suit, whether at law or in equity, can be maintained against the state unless the state has given its consent or waived its immunity." 237 Kan. at 608. But while these cases primarily involve actions for monetary damages subject to the Kansas Tort Claims Act, neither would clearly insulate LCF from a mandamus action.

4

The Kansas Supreme Court has long recognized that the principle of sovereign immunity, from which the subordinate agency rule draws strength, does not protect government entities from actions for equitable or extraordinary relief. See *State ex rel. Stephan v. Kansas House of Representatives*, 236 Kan. 45, 47-48, 687 P.2d 622 (1984) (where it was determined that sovereign immunity did not insulate the Kansas House of Representatives from mandamus suit brought on behalf of attorney general to determine constitutionality of statute). Where the State has granted a particular entity power to carry out an action, a petition for mandamus may request an order that the entity carry out the act authorized by the State. See *Kreipe v. National Bank*, 114 Kan. 910, 911, 220 P. 1061 (1923). Since the State has designated LCF as an entity to carry out statutory correctional powers, LCF may, under appropriate circumstances, be subject to a mandamus action to determine whether LCF has carried out the responsibilities authorized by the State. But this does not end our inquiry.

*B. Sperry Has Not Established Entitlement to Mandamus Relief*

Under K.S.A. 60-801, "[m]andamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law." Whether mandamus is an appropriate vehicle for relief requires interpretation of the applicable procedural and substantive statutes, over which this court has unlimited review. *May v. Pryor*, No. 113,777, 2016 WL 368134, at *1 (Kan. App. 2016) (unpublished opinion).

Generally, a writ of mandamus is available only to compel performance of a clearly defined duty or enforce an undisputed right. Additionally, a writ of mandamus is not appropriate if the petitioner seeks to compel a public official to perform an act involving discretion. Courts will generally only issue a writ to compel someone to perform acts that are "strictly ministerial," meaning those acts the official is obligated to

perform "in a prescribed manner, in obedience to the mandate of legal authority." *Shehan v. Kansas Dept. of Corrections*, No. 108,020, 2013 WL 781139, at \*2 (Kan. App. 2013) (unpublished opinion) (citing *Schmidtlien Electric, Inc. v. Greathouse*, 278 Kan. 810, 832-33, 104 P.3d 378 [2005]). Mandamus is an extraordinary remedy, available only in rare cases and as a last resort. *May*, 2016 WL 368134, at \*1 (citing *Bohanon v. Werholtz*, 46 Kan. App. 2d 9, 12-13, 257 P.3d 1239 [2011]). Based on these principles, Sperry would be entitled to mandamus relief only if he can establish: "(1) he has a clear right to relief; (2) [LCF's] duty is clearly defined; and (3) he has no other adequate remedy." *Shehan*, 2013 WL 781139, at \*2. His claims fail on all three grounds.

### *i. Clear right to relief*

Sperry argues he is entitled to mandamus relief because (1) many of the prior incidents listed in the ASR were untrue, (2) the ASR should have attempted to classify him as having "consistent bad behavior" rather than as an "other security risk," (3) his placement in segregation resulted from a conspiracy, and (4) the warden did not authorize his placement in segregation.

Sperry failed to provide any of the prison records he states "emphatically prove that over half of [the officer's] allegations were false." Sperry also failed to suggest any factual evidence of a conspiracy between the guards to place him in administrative segregation, alleging only that he perceived the officers dislike him and unsubstantiated statements they may have made. Although pro se petitions should be liberally construed, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Kelly v. Robertson*, No. 95,851, 2006 WL 2465528, at \*5 (Kan. App. 2006) (unpublished opinion) (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1202 [10th Cir. 1996]).

6

Sperry next argues that IMPP 20-104 I.B.12, which applies to inmates classified as having "consistent bad behavior," applies to him rather than the section applying to other security risk inmates. Sperry contends the other security risk section does not apply because the ASR did not state that he "threatened the maintenance of security or control in the correctional facility." IMPP 20-104 I.B.13.a. Apparently, Sperry wishes to be charged with having "consistent bad behavior" because it requires an inmate to have three documented instances of bad behavior within the last 12 months—documented behavior Sperry lacks, arguably rendering his administrative segregation illegal.

Prisons have wide discretion in the discharge of their duties that should not be interfered with unless it is exercised unlawfully, arbitrarily, or capriciously. *Kelly*, 2006 WL 2465528, at *7 (citing *Levier v. State*, 209 Kan. 442, Syl. ¶ 4, 497 P.2d 265 [1972]). In an ASR, correctional officers are required to "indicate, specifically, the reason for placing the offender in administrative segregation." IMPP 20-105 II.A.1. Here, the ASR sets forth in substantial detail the history of Sperry's conduct resulting in the administrative segregation. There is no requirement that specific language from the IMPP be used. The officer's decision to classify Sperry as an other security risk, rather than having consistent bad behavior, does not appear to have been unlawful, arbitrary, or capricious.

Lastly, Sperry argues his placement in administrative segregation was unlawful, requiring an order for mandamus, because the warden was not involved in or aware of the segregation. This is simply and clearly incorrect. When an inmate is designated an other security risk, "the warden may place [him] in administrative segregation." IMPP 20-104 I.B.13.a. Within 3 working days of placing him in segregation, the warden must explain the placement in writing. IMPP 20-104 I.B.13.a.1. Although not stated explicitly, IMPP 20-105 II.A. and III.A. indicate that the warden may use the ASR as his report. The policy does not specifically require a separate writing, and the ASR has a signature line for the warden, possibly to adopt the writing as his own. Sperry suggested no evidence

7

that the warden was unaware of his placement in administrative segregation, except to inaccurately state that the warden did not sign the ASR: the ASR clearly and unequivocally bears the warden's signature and authorization.

This court has previously decided that inmates do not have a liberty interest in avoiding administrative segregation so that they may mingle with the general population. *Briscoe v. Roberts*, No. 93,458, 2005 WL 1869054, at *2 (Kan. App. 2005) (unpublished opinion) (citing *Amos v. Nelson*, 260 Kan. 652, 657-66, 923 P.2d 1014 [1996]). Administrative segregation was established to allow prisons to control inmates for purposes other than punishment and they are allowed wide discretion in executing policies to preserve order. *Briscoe*, 2005 WL 1869054, at *2. For the foregoing reasons, Sperry does not have a clear right to relief he is requesting.

### ii. Clearly defined duty

The language used to classify an inmate as an other security risk may be applied to "any inmate or group of inmates if the inmate or inmate's [*sic*] have engaged in behavior which has threatened the maintenance of security or control in the correctional facility." IMPP 20-104 I.B.13.a. The language used to classify an inmate with "consistent bad behavior" allows officers to place an inmate in administrative segregation only when "the inmate's record has shown consistent bad behavior, as evidenced by three documented instances of bad behavior within the preceding 12 months" and there is a substantial threat to the safety or security of the prison. IMPP 20-104 I.B.12(a)(1).

The difference in specificity between these subsections demonstrates that correctional officers have discretion to determine what actions make an inmate an other security risk. Additionally, the penological purpose of administrative segregation shows its discretionary nature. "Administrative segregation is used as a method for physically segregating from the general population those prisoners who, for certain reasons, cannot

8

be placed in the general prison population." *Jamerson v. Heimgartner*, 304 Kan. 678, 681, 372 P.3d 1236 (2016) (distinguishing between administrative segregation and disciplinary detention). The name of the subsection indicates that it is intended as a catch-all, to allow officers to secure the prison when the situation does not fit neatly into one of the other defined subsections. The action requires discretion and is not a ministerial duty that can be enforced by mandamus action.

### iii. Other Adequate Remedy

Under K.S.A. 75-52,138, an inmate suing a political subdivision of Kansas must submit proof that they exhausted administrative remedies. Whether an inmate did exhaust their administrative remedies is a question of law subject to unlimited review. *Lynn v. Simmons*, 32 Kan. App. 2d 974, 976, 95 P.3d 99 (2003). First, the inmate must contact the unit team members in an attempt at informal resolution for an issue. K.A.R. 44-15-101(b). Next, the inmate may pursue the grievance by submitting complaint forms to the warden. K.A.R. 44-15-101(d)(2). If unresolved, the inmate may pursue it by submitting a complaint form to the Office of the Secretary of Corrections. K.A.R. 44-15-101(d)(3). Even had Sperry exhausted his administrative appeal to the Secretary, his appropriate remedy thereafter would have been a timely action under K.S.A. 60-1501 and not the extraordinary remedy of mandamus. Because there were other remedies available to him, Sperry's petition for mandamus also fails on this basis.

Sperry's petition for writ of mandamus was, and is, properly denied and dismissed.

Affirmed.