NOT DESIGNATED FOR PUBLICATION

Nos. 116,671
116,672

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT SAM WREN, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed December 8, 2017. Reversed and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Robert Sam Wren, Jr., pled no contest to one count of possession of methamphetamine and one count of burglary. His original sentence was remanded for resentencing. On remand, Wren argued he was eligible for mandatory drug treatment under K.S.A. 2016 Supp. 21-6824. The district court found Wren was excluded from treatment under K.S.A. 2016 Supp. 21-6824(h)(1)(A) because he was an Oklahoma resident and Wren presumably wanted to return to Oklahoma because he had listed an Oklahoma address as his residence. Wren appeals, arguing the district court erred in finding he met the exclusion under K.S.A. 2016 Supp. 21-6824(h)(1)(A).

1

On October 31, 2013, Wren pled no contest to one count of possession of methamphetamine in case No. 13-CR-270 and no contest to one count of burglary of a non-dwelling in case No. 13-CR-250. At sentencing, the district court found that Wren had a criminal history score of B. Defense counsel noted Wren had been evaluated for K.S.A. 2016 Supp. 21-6824, also known as Senate Bill 123. Counsel stated Wren satisfied all the requirements except that he was a resident of Oklahoma, so he did not qualify based on residency. Wren's presentence investigation (PSI) report indicated he was not eligible for drug treatment due to his criminal history and his residency. Wren requested a dispositional departure, but the court denied his request. The court sentenced Wren to 34 months' imprisonment in case No. 13-CR-270 and 29 months' imprisonment in case No. 13-CR-250, with the two sentences to run consecutively.

Wren appealed his sentence. *State v. Wren*, No. 111,702, 2015 WL 9283026 (Kan. App. 2015) (unpublished opinion). The *Wren* court found the district court had improperly calculated Wren's criminal history score. The court also held the district court erred in failing to inquire into Wren's financial resources prior to assigning BIDS attorney fees. It reversed and remanded for resentencing. 2015 WL 9283026, at *3-4.

The PSI report was completed on April 13, 2016. The PSI report indicated Wren's criminal history score was C. It also indicated he was not eligible for drug treatment due to criminal history and residency. In the box labeled "Officer's Assessment of Conditions of Probation," in a section for travel restrictions, the report stated, "THIS CASE WILL NEED TO BE INTERSTATE COMPACTED TO OKLAHOMA."

Wren filed separate departure motions in both his cases requesting probation. At a hearing on July 14, 1016, Wren argued instead that he was eligible for mandatory drug treatment under K.S.A. 2016 Supp. 21-6824. He told the district court that previously he had been ineligible because of his criminal history and because he was an out-of-state resident being monitored out-of-state. Because both of these factors had changed, Wren was now eligible for treatment. The court ordered Wren's counsel to brief the issue. The

2

court also stated it intended to file a notice to depart based on new offenses Wren had allegedly committed while on bond, but the record does not indicate that any such notice was ever filed.

Wren filed a motion for sentencing under K.S.A. 2012 Supp. 21-6604(n) and K.S.A. 2016 Supp. 21-6824 in both his cases. Wren noted he was not a resident of Kansas, but he was still eligible because he was not returning to another state subject to an interstate compact. At sentencing, Wren argued that while he was not a resident of Kansas, he had local connections and was willing to move his residency; therefore, he was still eligible for treatment under K.S.A. 2016 Supp. 21-6824.

The district court questioned Wren about his residency. Wren stated he had moved to Kansas two months before he went to jail, but the district court noted that on his most recent PSI report he had listed an Oklahoma address. Wren said he had been living with his girlfriend in Kansas, but he was not on the lease and had never received any mail at that residence. Wren also admitted he had an Oklahoma driver's license.

The district court noted that Wren had 10 convictions for crimes regarding truth or veracity. The court did not accept Wren's statements regarding his Kansas residency as truthful. The court also stated that all the other information Wren had presented to the court indicated he was still a resident of Oklahoma. It denied Wren's request for treatment under K.S.A. 2016 Supp. 21-6824 because Wren was an Oklahoma resident and Wren presumably wanted to return to Oklahoma because he had listed an Oklahoma address as his residence. The court sentenced Wren to 29 months' imprisonment for his burglary offense and 32 months' imprisonment for possession of methamphetamine, with the sentences to run consecutively. Wren appeals.

On appeal, Wren argues that he met the qualifications for mandatory drug treatment under K.S.A. 2016 Supp. 21-6824. He contends the district court erred in finding him ineligible solely due to his Oklahoma residency. He argues the statute also

3

required that he was returning to Oklahoma subject to an interstate compact. He asserts he was not and he was still eligible for sentencing under K.S.A. 2016 Supp. 21-6824.

The State counters that Wren met the exclusion in K.S.A. 2016 Supp. 21-6824(h)(1)(A). Therefore, the district court sentenced him correctly. Alternatively, the State argues the case should be remanded for further fact-findings.

Resolving this issue requires interpretation of K.S.A. 2016 Supp. 21-6824, commonly known as SB 123. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). Wren also contends his current sentence is illegal. Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is also a question of law over which we have unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

K.S.A. 2016 Supp. 21-6824(a)(1) mandates drug treatment for certain qualifying offenders, and district courts do not have the discretion to impose a different sentence. See *State v. Andelt*, 289 Kan. 763, 771-72, 217 P.3d 976 (2009). In order to qualify for drug treatment under K.S.A. 2016 Supp. 21-6824, an offender must be convicted of a felony violation of 21-5706, unlawful possession of controlled substances. The offense must be "classified in grid blocks 5-C, 5-D, 5-E, 5-F, 5-G, 5-H or 5-I of the sentencing guidelines grid for drug crimes." The offender cannot have a prior felony drug conviction described by K.S.A. 2016 Supp. 21-6824(a)(1).

Wren was convicted of a felony violation of K.S.A. 2012 Supp. 21-5706. After his criminal history score was corrected on remand, he fell into grid block 5-C on the drug sentencing grid. He also had no prior convictions of the offenses listed in K.S.A. 2016 Supp. 21-6824(a)(1). Therefore, he met the basic qualifications for mandatory drug treatment.

4

Despite the mandatory nature of sentencing under K.S.A. 2016 Supp. 21-6824, the statute excludes certain offenders who otherwise meet the qualifications. K.S.A. 2016 Supp. 21-6824(h)(1). Among those excluded are offenders who "[a]re residents of another state and are returning to such state pursuant to the interstate corrections compact or the interstate compact for adult offender supervision." K.S.A. 2016 Supp. 21-6824(h)(1)(A). Here, the parties are contesting whether Wren was excluded from treatment based on K.S.A. 2016 Supp. 21-6824(h)(1)(A).

Wren does not directly challenge the district court's finding that he was a resident of Oklahoma. Rather, he argues that he was not returning to Oklahoma subject to an interstate compact. According to Wren, the district court misinterpreted the statute and erred in denying mandatory drug treatment based solely on his residency.

K.S.A. 2016 Supp. 21-6824(h)(1)(A) excludes defendants who, in part, are returning to another state subject to an interstate compact. While the district court found that Wren presumably wished to return to Oklahoma, it did not find that Wren was returning subject to an interstate compact. Wren, however, did not object to the court's failure to make this finding.

When no objection is made to a district court's inadequate findings of fact or conclusions of law, this court can presume the district court found all facts necessary to support its judgment. *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). However, where the record does not support such a presumption and the lack of specific findings precludes meaningful review, we can consider a remand. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). The record in this case does not support a presumption that Wren met both qualifications under K.S.A. 2016 Supp. 21-6824(h)(1)(A).

Under the Interstate Compact for Adult Offender Supervision (ICAOS), the State has discretion to determine where an offender will serve his or her sentence. ICAOS

5

Bench Book for Judges and Court Personnel, 9, 37, 53 (2017). At the discretion of the sending state, a receiving state must accept supervision of an offender if the offender:

"(a) has more than 90 calendar days or an indefinite period of supervision remaining at the time the sending state transmits the transfer request; and

"(b) has a valid plan of supervision; and

"(c) is in substantial compliance with the terms of supervision in the sending state; and

"(d) is a resident of the receiving state . . . ." ICAOS Rule 3.101.

An offender is "an adult placed under, or made subject to, supervision as the result of the commission of a criminal offense and released to the community under the jurisdiction of courts, paroling authorities, corrections, or other criminal justice agencies . . . ." ICAOS Rule 1.101; see K.S.A. 22-4110, Article II. A sending state may also request the transfer of an offender who does not meet the requirements for a mandatory transfer "where acceptance in the receiving state would support successful completion of supervision, rehabilitation of the offender, promote public safety, and protect the rights of victims." ICAOS Rule 3.101-2. Acceptance of such a transfer lies within the discretion of the receiving state. The receiving state has up to 45 days to investigate and respond to a sending state's request for any transfer. ICAOS Rule 3.104.

According to the ICAOS, an offender cannot be subject to a transfer under the compact until after sentencing. Furthermore, the receiving state may take an additional 45 days to respond to a transfer request. Therefore, Wren could not have been returning to Oklahoma subject to the ICAOS at the time of sentencing because he had not been sentenced yet.

Similarly, under the Interstate Corrections Compact (ICC), a sending state may, within its discretion, send an inmate to an institution in another state party to the compact. K.S.A. 76-3002; *Lynn v. Simmons*, 32 Kan. App. 2d 974, 980-81, 95 P.3d 99 (2003). An inmate is "a male or female offender who is committed, under sentence to or confined in a penal or correctional institution." K.S.A. 76-3002, Article II(d). Again,

6

Wren could not have been subject to transfer under the ICC because he was not already an inmate sentenced to a penal or correctional institution.

The legislative history of K.S.A. 2016 Supp. 21-6824 suggests, however, that subsection (h)(1)(A) was intended to exclude all defendants who would not remain in Kansas to serve their sentence. The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). The Legislature amended 21-6824 (formerly K.S.A. 21-4729) in 2006 to include subsection (h)(1)(A). L. 2006, ch. 211, § 7. Testimony suggests the purpose of this amendment was to prevent offenders who would not be available to participate in certified drug treatment programs in Kansas from incurring unnecessary costs by taking presentencing drug evaluations. The statute was intended to apply to "defendants who are residents of another state and will be returning to that state." Minutes of the House Judiciary Committee, March 14, 2006, Attachment 6.

Thus, there is a conflict between the language of K.S.A. 2016 Supp. 21-6824(h)(1)(A) and the procedures of the ICAOS and the ICC. The statutory language requires a finding that the defendant is returning to another state subject to an interstate compact prior to sentencing. Yet, the defendant cannot be subject to the compacts until after sentencing. We could interpret K.S.A. 2016 Supp. 21-6824(h)(1)(A) as applying only to offenders who are already subject to transfer due to another criminal case. This, however, would be inconsistent with the intent of the statute, which aimed to exclude any defendant who would be unavailable to participate in Kansas drug treatment programs.

We must construe statutes to avoid unreasonable or absurd results and presume the Legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). In factual circumstances like Wren's, the best way to reconcile the statute with the interstate compact is to require district courts to find that a defendant is eligible for mandatory transfer under the ICAOS or the State intends to transfer the defendant under the ICC. District courts may also want to require the State to

7

complete the necessary paperwork for transfer either prior to sentencing or within a reasonable amount of time afterwards. In this case, however, the district court made no such findings, and the record does not support any such findings.

The State argues that the PSI report's indication that the case needs to be "interstate compacted to Oklahoma" is enough to show Wren met the exclusion under K.S.A. 2016 Supp. 21-6824(h)(1)(A). However, the record of the sentencing hearing suggests the district court did not rely on the PSI report in reaching its conclusion. Additionally, the State has not presented any argument that a probation officer's assessment that a case needs to be transferred to another state under an interstate compact is sufficient evidence that it will in fact be transferred. This matter must be remanded for further findings of fact. To aid the district court with its findings, it might well obtain testimony from officials with the Kansas Department of Corrections who are familiar with compact administration in cases such as Wren's, especially as to whether a defendant likely would be transferred out of state without a request or over his or her objection.

Wren also argues the district court erred in imposing BIDS fees. At the sentencing hearing, the following exchange took place:

> "[THE COURT:] Mr. Wren, once you are released from prison on these two cases—are you capable of working and earning a living wage and paying back the State of Kansas for making payment on the restitution, the court costs, and your attorney's fees?
> "[WREN]: Yes, Your Honor.
> "THE COURT: All right. If you cannot do that, you can petition the Court to have the court costs, fines, and fees waived. If you show to the Court that your financial circumstances are dire and—the Court will consider that."

The court then ordered Wren to pay courts costs of $195 and attorney fees of $1,100 in each case and one fingerprinting fee of $45.

8

Wren argues the district court failed to consider the burden any payments would impose as required by K.S.A. 22-4513(b). The State responds that the court complied with the statute and Wren should have brought any relevant financial information to the court's attention. Again, this issue requires interpretation of a statute, and our review is unlimited. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Wren did not object to the imposition of BIDS fees at the district court level. This does not preclude review of this issue. In *State v. Robinson*, 281 Kan. 538, 541, 132 P.3d 934 (2006), the Kansas Supreme Court addressed the imposition of BIDS fees for the first time on appeal, explaining it involved only a question of law. The State asks us to disregard *Robinson* and decline to hear this issue on appeal, but it has provided no authority to support its argument.

K.S.A. 22-4513(a) requires a defendant represented by appointed counsel and subsequently convicted to reimburse the State for the expenditures made by BIDS. K.S.A. 22-4513(b) states that, "In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose." The Kansas Supreme Court has interpreted K.S.A. 22-4513(b) to mean that a court must consider the financial resources of the defendant and the nature of the burden that payment will impose explicitly, stating on the record how those factors have been weighed in the court's decision. *Robinson*, 281 Kan. at 546.

On remand, the district court did ask Wren about his ability to pay any court costs or fees. However, a brief inquiry into a defendant's financial status is generally not enough. For example, merely asking a defendant when he could start paying and how much he could pay does not satisfy the *Robinson* requirements. *State v. Knight*, 44 Kan. App. 2d 666, 687, 241 P.3d 120 (2010).

9

This case is very similar to *State v. Reighard*, No. 111,758, 2015 WL 4094283 (Kan. App.) (unpublished opinion), *rev. denied* 303 Kan. 1081 (2015). In that case, the district court verified that the defendant was able to work and that he would be willing and able to pay BIDS fees if he was working. On review, the *Reighard* court found the district court's inquiry was insufficient to satisfy the *Robinson* requirements. 2015 WL 4094283, at *3.

As with *Reighard*, the district court here only noted that Wren would be able to work and pay any costs and fees. The court did not inquire into the nature of the burden that payment of the assessed fees would impose. Additionally, the court did not state on the record how it weighed those considerations in making its decision.

The State argues that the court accounted for any possible burden to Wren by telling him about the petition to waive fees, and Wren bore the burden to present any relevant financial information to the court. The State does not explain how informing a defendant of his statutory ability to petition for a waiver of fees reflects an explicit consideration of the burden a fee payment might present based on the defendant's financial circumstances. Additionally, the waiver procedure is not "a substitute for the sentencing court's initial consideration of a defendant's finances." *Robinson*, 281 Kan. at 544. As for whether Wren erred in not bringing other information to the court's attention, the Kansas Supreme Court has noted the language of K.S.A. 22-4513 places mandatory requirements on a district court when imposing BIDS fees, and "[t]here is no indication that the defendant must first request that the sentencing court consider his or her financial circumstances." 281 Kan. at 543.

Therefore, we reverse and remand this case to the district court for consideration of the above issues.

Reversed and remand with directions.

10