NOT DESIGNATED FOR PUBLICATION

No. 119,719

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PATRICK C. LYNN,
*Appellant*,

v.

CHRIS ROSS, et al.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed June 11, 2021. Affirmed.

*Patrick C. Lynn*, appellant pro se.

*Sherri Price*, legal counsel and special assistant attorney general, of Lansing Correctional Facility, for appellees.

Before POWELL, P.J., MALONE and GARDNER, JJ.

PER CURIAM: Patrick C. Lynn appeals the district court's dismissal of his civil action against the Kansas Department of Corrections (KDOC) and several of its officers and employees. Lynn claims (1) the district court erred by dismissing the case; (2) the presiding judge was biased against him; (3) defense counsel had an impermissible conflict of interest; (4) the destruction of his legal files and materials denied him his constitutional right to access the courts; and (5) the longstanding injunction restricting his filings in Kansas district courts should not apply to claims filed under K.S.A. 60-1501 and K.S.A. 60-1507. Finding no error, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Lynn was convicted of aggravated kidnapping, aggravated burglary, rape, and aggravated sodomy. *State ex rel. Stovall v. Lynn*, 26 Kan. App. 2d 79, 975 P.2d 813 (1999) (*Lynn I*). In the years since his conviction, Lynn has filed over 25 pro se actions which made their way to Kansas' appellate courts for review. See, e.g., 26 Kan. App. 2d at 79-80 (identifying some cases and noting parallel federal litigation); *Lynn v. Simmons*, 32 Kan. App. 2d 974, 95 P.3d 99 (2003). He also pursued more than nine original actions in this court and the Kansas Supreme Court seeking writs of habeas corpus or mandamus. See, e.g., *Lynn v. Moriarty*, No. 117,689 (petition for writ of mandamus denied in 2017); *Lynn v. McClain*, No. 78,919 (petition for writ of mandamus denied in 1997). We will set forth the factual and procedural history of Lynn's current case in detail.

On March 9, 2015, while incarcerated at Lansing Correctional Facility (LCF), Lynn filed a verified complaint and demand for jury trial in Leavenworth County District Court. He titled the pleading "Verified Complaint (Jury Demand—All Triable Issues) (Pursuant to 42 USC § 1983, KSA 60-201 et seq., [and] KSA 75-6101 et seq.)." Lynn named as defendants 14 individuals working at LCF in various capacities, the KDOC, and the Secretary of the KDOC. Lynn's petition alleged that in August and September 2014, while he was recovering from heart surgery, guards routinely harassed him and abused their authority. According to Lynn, when he filed grievances about the behavior, the individuals involved in grievance review and resolution routinely committed fraud and adopted fraudulent recommendations about the disposition of Lynn's grievances.

The dates in Lynn's petition vary, sometimes alleging events happened in 2014 and sometimes alleging they happened in 2015, but it appears that on September 3, September 29, and October 9, 2014, Lynn was admitted into the prison infirmary. During each of his stays in the infirmary, LCF guards allegedly destroyed some of Lynn's property in his cell; among other things, guards removed or destroyed 75 percent of his

legal materials, broke his television and his headphones, and stole a bag of coffee. Although Lynn filed property claims and grievances, he asserted that those were not fully investigated, despite a prison employee's false claims to the contrary and prison officials' eventual acceptance of those false claims.

Lynn alleged in his petition that this behavior violated several Kansas criminal statutes; created claims under the Kansas Tort Claims Act, K.S.A. 75-6101 et seq.; and violated his rights under the First and Eighth Amendments to the United States Constitution, entitling him to pursue a civil suit under 42 U.S.C. § 1983. Lynn sought declaratory judgment, injunctive relief, compensatory damages, and punitive damages.

The Honorable Gunnar A. Sundby was assigned to preside over the case. Over the next four months, a flurry of communication regarding initiating the lawsuit occurred between the district court and Lynn. Lynn also asserted to the court that prison officials were transferring him to other correctional facilities such as Hutchinson Correctional Facility (HCF) in retaliation for his litigation and his use of the prison grievance process. Lynn also wrote letters to Chief Judge David J. King of the Leavenworth County District Court expressing, among other things, displeasure with the district court clerk's office and with Judge Sundby, asking the chief judge to reassign the case to a different judge.

In July 2015, attorney Sherri Price entered her appearance as defense counsel of record. The same month, Lynn sought leave to file an amended complaint or otherwise amend his original complaint. On July 27, 2015, Lynn filed a "Verified Supplemental Complaint," in which he named 4 defendants from the original complaint and added 10 more defendants, all of whom were LCF staff. Lynn's supplemental complaint alleged that when he was admitted into the prison infirmary in March 2015, prison staff again destroyed, stole, and improperly disposed of more of his personal property. Lynn alleged that his grievances were not properly resolved and that he was transferred to HCF as retaliation for his complaints and grievances. Lynn's supplemental complaint asserted that

3

the defendants had violated his First and Eighth Amendment rights, violated Kansas criminal laws, and engaged in reckless and gross negligence. Lynn again sought declaratory judgment, injunctive relief, compensatory and punitive damages, and reimbursement of all costs, fees, and expenses incurred in bringing this lawsuit. Lynn also asked to make a citizen's arrest of six defendants so they could be prosecuted for the crimes he believed they had committed.

Meanwhile, some of the defendants moved to dismiss and Lynn moved for entry of default judgment against other defendants. On July 28, 2015, Lynn responded to the motions to dismiss, asserting that defense counsel "need[ed] a psychiatric examination" if she truly believed the arguments in her motions to dismiss and asking the court to impose sanctions upon her for trying to commit fraud upon the court by making the arguments. Lynn also argued that his complaint stated sufficient facts to support his claims and that he had exhausted available administrative remedies, so he asked the district court to deny the motions to dismiss.

The district court issued an order resolving some of Lynn's outstanding motions; it denied his request that Judge Sundby recuse himself, his request that the clerk of the district court be arrested, his request for a case management conference, and his request for default judgment but granted his request to file an amended complaint. The order stated that the court would take up remaining outstanding motions and other matters at a hearing on August 18, 2015.

Because of Lynn's ongoing medical issues and his transfer to El Dorado Correctional Facility (EDCF), the August 18, 2015 hearing was rescheduled to September 1, 2015. The record on appeal contains no transcript of that hearing but an order the district court later issued stated that the court held a telephone conference with defense counsel and Lynn, but Lynn "was not feeling well so no discussion was made about this pending case." The district court continued the hearing to September 15, 2015.

4

Lynn continued to file motions asserting continuing violations of his rights and seeking varying forms of relief. For example, on September 18, 2015, he submitted a motion asking the court to hold two defendants in contempt for not transferring him back to LCF, to subpoena them and a prison unit counselor to testify at the September 15 hearing, and to order the Kansas Attorney General to issue an opinion on the court's authority to direct where Lynn would be housed. In that same filing, Lynn complained about his living conditions at EDCF and he asked the court to take his sworn testimony about "15 unlawful uses of force [and] rampant deliberate indifferences to his serious medical condition [and] failing health," order an investigation by the Kansas Bureau of Investigation, ask the governor to appoint a special prosecutor, and institute criminal proceedings as appropriate.

Although the record on appeal has no transcript of the September 15, 2015 hearing, an order issued by the district court one week later reflected that the hearing addressed "several issues pending in this civil action." That same order denied Lynn's continuing requests that he be transferred back to LCF, noting that the court could not direct where Lynn would serve his prison sentence. The order also scheduled a case management conference for October 22, 2015, although the court later rescheduled it to October 20, 2015.

Although Lynn did not file an amended complaint, the defendants filed their answers to Lynn's supplemental complaint in late September and early October 2015. The record on appeal reflects that the district court held a telephone hearing on November 3, 2015. Once again, the lack of a transcript leaves unclear what happened at that hearing. Lynn alleged in a later letter to Chief Judge King that Judge Sundby "hung up on me again as I gave notice I was denied pen, paper, legal postage [and] he issued orders for me to file witness lists, exhibits list, [and] court pleadings in Ross and refused to intervene into my [prison] conditions." On the other hand, in a written order filed November 17, 2015, the district court stated:

5

"Because of the conduct of the plaintiff on the telephone at the last attempt at a case management conference, the hearing was terminated and rescheduled for December 15, 2015 at 1:00 pm. The petitioner is advised that unless he cooperates and controls his comments, that it will result in another suspension of the case management conference and perhaps a dismissal of the action for failure [to] prosecute."

The district court attempted another case management conference by telephone on December 15, 2015; once again, the record on appeal contains no transcript of this hearing and it is unclear what occurred during the conference. According to Lynn, he asked Judge Sundby during that conference to recuse himself, but Judge Sundby

"threatened again to hang up on me as I said I wanted to file a Recusal Mandamus to KCOA against [him] because it's clear to me [and] others he's in conspiracy with defense counsel and defendants to deny my court access rights [and] the [piece] of shit hung up on me again."

In an order issued December 21, 2015, the district court stated:

"Now on this 15th day of December, 2015, this matter comes on for case management by the court. The plaintiff appears by telephone. The defendants' attorney appears by Ms. Price.
"Thereupon attempt is made to conduct a case management conference. However due to lengthy discussion by the plaintiff and the lack of ability to go forward with an effective case management conference, the telephone conference was terminated by the court.
. . . .
"This case already consumes three file folders and the court has focused on trying to respond to the numerous requests of the plaintiff. This court has tried to go forward to a conclusion with a case management conference and has not been successful."

On January 4, 2016, some of the defendants filed their second motion to dismiss, arguing that Lynn had failed to state a claim against them on which relief can be granted

6

and that he had also failed to exhaust administrative remedies. The district court scheduled a hearing on the motion to dismiss and a case management conference for February 11, 2016, but Lynn refused to get on the transport bus to travel to the hearing, citing concerns about the electronic stun vest the guards insisted he wear. Thus, the court continued the hearing to March 17, 2016. In an order dated March 10, 2016, the district court advised Lynn that if he "fail[ed] to avail himself of the opportunity to appear at his hearing, then the court will attempt to reach [Lynn] by telephone and hear the arguments pertaining to the motion to dismiss, and case management if the motion is denied."

On April 14, 2016, Lynn filed a "Verified Second Supplemental Complaint" seeking to name additional defendants and add new claims to the case. He also filed a "Request for Leave of Court To File Either A Massive Amended Complaint Or A Massive Supplemental Complaint; And Request for Oral Arguments W/Out Delay" and a "Motion For A Temporary Stay Of All Proceedings And Request For Oral Arguments With Key Officials In Court." On April 20, 2016, some defendants objected to Lynn's motion to amend or supplement his petition. On May 2, 2016, Lynn filed a motion asking the district court to allow him to file supplemental complaints and to order the defendants to respond to them and he also responded to the motion to dismiss.

On February 9, 2017, the district court held a hearing which Lynn attended by telephone. At the hearing, the district court dismissed some of Lynn's claims and denied his motion to file a second supplemental complaint, his motion for emergency protective orders, and his motion to transfer the case to the Shawnee County District Court. The court set a pretrial conference on the remaining claims for April 6, 2017, at which Lynn could appear by telephone.

On March 3, 2017, Lynn filed a "Motion [for] Photocopy Of The Entire Court Record ROA Due To Defendant's Destructions Of His Case Files [and] Evidence [with] Criminal Intentions To Retaliate [and] Obstruct Justice [and] Request For Oral

7

Arguments." Lynn asserted that on July 12, 2016, "all of [his] legal [and] personal property was ransacked [and] trashed" and his "legal files, including this case . . . were maliciously destroyed . . . in retaliation for his 1st Amendment activities which includes this case." Throughout the rest of his case, Lynn repeatedly asked the court for an order compelling the clerk's office to provide him with a copy of the entire district court record and ordering the LCF warden to pay any associated costs. Lynn maintained that the destruction of his legal materials and files rendered him unable to pursue his litigation.

On March 6, 2017, Lynn filed a "Verified Supplemental Complaint (4th)," in which he sought to add defendants and claims based on alleged ongoing incidents of abuse and unfair treatment he claimed occurred after the inception of this suit. Among the new named defendants were defense counsel Price and Judge Sundby and some of the new claims stemmed from acts in Butler and Greenwood Counties. Lynn also moved for leave to file and prosecute his supplemental complaint.

When the district court convened the pretrial conference on April 6, 2017, it was informed that Lynn was unavailable to appear because "he was placed in cell confinement due to unruly behavior and throwing bodily fluid on staff." Thus, the court continued the pretrial conference to May 9, 2017. On that day, Lynn was unavailable and defense counsel was unprepared, so the court continued the case to May 17, 2017, and ordered that arrangements be made for Lynn to appear at the hearing by telephone. But on May 17, the court was informed that Lynn was unavailable for the hearing because he "refused to come out of his cell." Thus, the court again continued the pretrial conference, this time to July 11, 2017.

In an order dated June 6, 2017, the district court set forth the recent history of the case and stated that it had received complaints from Lynn that "this court has done nothing" toward moving the case to trial. After noting that Lynn "has not participated in the attempted telephone conferences this court has set," the court "direct[ed] that a copy

8

of this order . . . be served on the plaintiff with an email from staff at DOC verifying that the plaintiff has been given a copy of this order setting this case for a telephone pretrial conference. Failure to participate will result in dismissal of the case."

In an 11-page "Verified Rebuttal To The Court's 6-6-16 [*sic*] Order With Motion For Injunctive Relief Orders" filed on June 23, 2017, Lynn informed the court that he had never been told about the hearing on April 6 and that he only learned of it when he received the court's June 6 order on June 19, 2017. He denied engaging in unruly behavior or throwing bodily fluids on staff as had been represented to the court. Lynn asserted that the district court should sanction defense counsel for telling the court on May 9, 2017, that she was unprepared for the hearing; Lynn insisted that statement was not true. He also alleged that he had been beaten and he asserted that defense counsel had "a key role" in that attack. Lynn stated he could not "coherently participate" in a pretrial conference without his destroyed case files and time to prepare. Lynn also opined that holding a pretrial conference was "a retarded waste of the Court's time" given the abuses he believed he had suffered at defense counsel's and Judge Sundby's direction. Lynn again requested that Judge Sundby recuse himself.

On July 11, 2017, the district court held a hearing at which Lynn appeared by telephone. After discussing other cases at length, Lynn turned to this case. He asked the court to issue orders and levy sanctions related to his treatment and his lack of access to his legal files. The district judge tried to steer the conversation toward Lynn's recent motion to strike discovery responses, but after referring briefly to the discovery he desired, Lynn turned to arguments that he had a right to continue adding claims and defendants to this case and he returned to complaints about his lack of access to legal files and materials. Lynn concluded by asking the judge to continue the hearing and "order [defense counsel] to give me my property."

9

When asked, defense counsel informed the court that she was not intentionally withholding legal documents from Lynn and she offered to determine the status of Lynn's legal materials and file a report with the court. The district judge began to explain to Lynn what would happen, but Lynn interrupted to speak again about the destruction of his property, the mistreatment of the remaining boxes of his property, and his belief that defense counsel was not being honest with the court. The district court informed Lynn that it would contact him after receiving the report about the status of his property.

In a later order memorializing the hearing, the district court described:

> "The court had scheduled this for case management conference. The plaintiff provided very little during the twenty minute discussion. He reports that due to his numerous pending cases he is unable to discuss this case. He asserts that he has four boxes containing notes concerning his litigation and cannot focus on this case. The court is anxious to get this case moving to determination and does not find further telephone or in person visits to be helpful.
>
> "To that end, the court is asking if these boxes can be located and provide an answer as to why they are not available for viewing and use by the plaintiff. There are times when the court has heard that the plaintiff has refused to accept his property or documents. Or the issue may be due to certain custody level, segregation or other restrictions. It could be that the plaintiff is due to be transferred soon so it is being kept packed and ready to ship. Or it could be a misunderstanding. So please advise the court."

On July 19, 2017, Price filed with the court a report that set forth the rules regarding inmates' personal property and legal materials and asserted that Lynn had refused to speak or interact with prison staff about his legal materials when they sought to do so. The report concluded that Lynn possessed his legal documents "to the extent that he accepted them" and that documents he refused to accept were "placed with his other legal materials in property."

10

The next day, Lynn filed yet another "Verified Supplemental Complaint," again seeking to add defendants and claims to this case. On August 10, 2017, the district court issued an order noting this filing and also noting that the accusations did not relate to the original filing and were not compatible with this case, considering its procedural posture and subject matter. Thus, the court ordered that this verified supplemental complaint be removed from this case file and use it to open a new civil case.

On September 12, 2017, the district court held an evidentiary hearing on Lynn's claim that he was being denied access to his legal files or that they were destroyed or damaged. The transcript of the September 12, 2017 hearing reflects that Lynn appeared by telephone and as soon as the court called the case, Lynn asserted that he wanted to appear in person and call witnesses. Lynn alleged that since their last conversation, he had suffered two heart attacks and been denied medical treatment. Lynn asked the court to continue the hearing to allow him to appear in person and call 15 witnesses, asserting that he had filed a motion for subpoenas for those witnesses. The district court asked defense counsel whether she had witnesses to call and, when she said she did, the district court denied Lynn's request to continue. The following then occurred:

> "MR. LYNN:  Oh, goddammit. Hey, Judge, you know what? Stick this whole goddamn hearing up your ass, because I'm gonna stab one of these goddamn motherfuckers. You keep doing this goddamn shit to me, you rotten motherfucker. And goddammit, I (inaudible) proceed like this, you stupid motherfucker. (inaudible) you pig.
> "THE COURT:  All right. So you decline to go forward with the hearing, then, Mr—
> "MR. LYNN:  I'm gonna fucking put my goddamn knife in your bitch-ass (inaudible). You fucked me out of my goddamn—goddamn attorney called last week (inaudible). I dedicate my life—
> "UNKNOWN PERSON:  Is there anything else, sir?
> "MR. LYNN:  —to getting your bitch-ass.
> "THE COURT:  No, that'll do it. That'll conclude—
> "MR. LYNN:  —(inaudible) my life—

11

"THE COURT:  —the hearing.

"MR. LYNN:  —to getting your bitch-ass—

"THE COURT:  Okay. Call your first witness, Ms. Price."

Lynn did not participate further in the hearing; the transcript does not reflect whether Lynn left the call. The district court heard testimony from defense witnesses about the processing, handling, and status of Lynn's property. After hearing argument from the defense, the district court found that there was no evidence showing Lynn's property had been confiscated or unnecessarily withheld from him. Rather, the district court found, Lynn had chosen not to avail himself of the procedures required for regaining possession of his property. The district court declined to enter any orders on Lynn's property; announced its intention to proceed with the pretrial conference scheduled for October 24, 2017; and concluded the hearing.

On October 16, 2017, Lynn filed a motion requesting a 30-day stay to allow him to seek permission from the federal district court to add the claims in this case to a case filed in federal court. When Lynn failed to appear for the pretrial conference on October 24, 2017, apparently because he "refused to be transported for court," the defendants asked the district court to dismiss the case for failure to prosecute. The district court took the defendants' motion to dismiss under advisement and granted Lynn's request to stay the case for 30 days.

On November 30, 2017, after the 30-day stay had elapsed, the district court issued an order noting that it was unaware whether Lynn's efforts in federal court had succeeded. Thus, the district court would "attempt one more time to conduct [the] final pretrial conference" on December 14, 2017. Although the record on appeal contains no transcript of that conference, a subsequent journal entry reflects that Lynn appeared at the conference and informed the district court he had until December 30 to file an amended

12

complaint in federal district court. The district court scheduled a telephone conference for January 23, 2018, to receive a status report and conduct a pretrial conference if necessary.

Lynn appeared by telephone at the January 23, 2018 hearing, but the record on appeal contains no transcript of that hearing. A subsequent journal entry shows that Lynn "refused to participate in the hearing, eventually disconnecting from the phone call before any action could be taken by the court." At that time, the defendants reasserted their motion to dismiss for failure to prosecute and the district court granted it given Lynn's "continued refusal to cooperate and participate in court proceedings and a failure to prosecute his case." On February 26, 2018, the district court filed its journal entry dismissing the case with prejudice for failure to prosecute.

On March 22, 2018, Lynn moved to alter and amend judgment and for an evidentiary hearing. He alleged that during the January 23, 2018 telephone hearing, he asked about why he had not been brought to court in person for the hearing, at which point Judge Sundby "rudely interrupted [Lynn's] inquiry [and] berated [him with] deliberately false accusations that [he] had ranted [and] rambled for over 25 minutes at the 12-14-17 hearing." Lynn also alleged that when he "angrily protested that was an outright lie," Judge Sundby mocked him and threatened to hang up on him at which point Lynn "replied [he] would not tolerate his lies [and] mocking [him and] hung up." Lynn argued that he had a right to have the journal entry of dismissal set aside because of procedural defects and because the district judge and defense counsel had committed fraud upon the court. The district court denied the motion to alter or amend judgment on March 27, 2018. Lynn timely filed his notice of appeal.

On appeal, Lynn claims (1) the district court erred by dismissing the case; (2) the presiding judge was biased against him; (3) defense counsel had an impermissible conflict of interest; (4) the destruction of his legal files and materials denied him his constitutional right to access to the courts; and (5) the longstanding injunction restricting

his filings in Kansas district courts should not apply to claims filed under K.S.A. 60-1501 and K.S.A. 60-1507. To begin with, we note that despite Lynn's extensive litigation experience, his brief disregards many appellate briefing requirements. Most significantly, his statement of facts are not keyed to the record on appeal, as required by Supreme Court Rule 6.02(a)(4), and he does not begin each issue with "a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on" or include "an explanation why the issue is properly before the court," as required by Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 36). Lynn also fails to begin each issue "with citation to the appropriate standard of appellate review," as required by Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 36). Lynn's wholesale failure to comply with multiple requirements of Rule 6.02(a) means this court could decline to consider his claims. See *State v. Salary*, 309 Kan. 479, 486, 437 P.3d 953 (2019) (holding that the failure to comply with Rule 6.02[a][5] fails to preserve an argument for appellate review).

Another problem Lynn is facing is the incomplete nature of the record on appeal. The register of actions created in the district court reveals that 11 hearings were held in district court. But the record on appeal contains transcripts of only two hearings, neither of which is the hearing that immediately preceded the district court's dismissing Lynn's case for failure to prosecute. Lynn provided neither the district court nor this court any legal authority under which he is entitled to no-cost transcripts to appeal the dismissal of a lawsuit such as this one, which is brought under 42 U.S.C. § 1983.

Generally, Lynn's appellate issues are sweeping challenges to the way his case progressed in the district court, the district judge's actions, the decision to dismiss his case for failure to prosecute, defense counsel's behavior, the behavior of prison staff, and the filing restrictions placed on him over 20 years ago. As the party asserting that the district court erred, Lynn bears "the burden to designate a record affirmatively showing prejudicial error. Without such a record, we must presume the actions of the district court were proper." *State v. Meggerson*, 312 Kan. 238, 249, 474 P.3d 761 (2020). The lack of a

14

complete record hinders this court's ability to consider Lynn's arguments on their merits. Still, we will address the merits of Lynn's claims on appeal as much as we can.

*Did the district court err by dismissing Lynn's case?*

Lynn first challenges the district court's dismissal of his lawsuit for lack of prosecution. He contends the dismissal was "meritless," violated his constitutional rights, and constituted judicial misconduct. The defendants respond that the district court's dismissal of the case for failure to prosecute was not error.

> "'Orders of dismissal for want of prosecution rest in the judicial discretion of the district courts in order that they may control their dockets, eliminate procrastination and delay, and expedite the orderly flow of business, subject, however, to statutory notice requirements. Such orders will not be reversed on appeal in the absence of a clear showing of abuse of judicial discretion.'" *Namelo v. Broyles*, 33 Kan. App. 2d 349, 353, 103 P.3d 486 (2004) (quoting *Frost v. Hardin*, 218 Kan. 260, 263, 543 P.2d 941 [1975]).

"A district court abuses its discretion if it makes an error of law, makes an error of fact, or was otherwise arbitrary, fanciful, or unreasonable." *In re A.A.-F.*, 310 Kan. 125, 141, 444 P.3d 938 (2019). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

The record on appeal reflects that several events justified the district court dismissing Lynn's case in February 2018 for failure to prosecute. It does not support Lynn's assertions that the district court "unconscionably stymied" or blocked case progression while Lynn sought to move the case forward.

In November 2015, the district court had to terminate a scheduled telephonic case management conference "[b]ecause of the conduct of the plaintiff on the telephone." The

15

judge warned Lynn that unless he cooperated and controlled his comments, it would "result in . . . perhaps a dismissal of the action for failure [to] prosecute." Despite this warning, the case management conference in December 2015 was also terminated "due to lengthy discussion by the plaintiff and the lack of ability to go forward with an effective case management conference." In February 2016, Lynn refused to get on the transport bus to attend a hearing on a motion to dismiss and a case management conference.

In April 2017, Lynn did not attend the scheduled pretrial conference because he had been "placed in cell confinement due to unruly behavior and throwing bodily fluid on staff." In May 2017, Lynn did not appear at the rescheduled pretrial conference because he "refused to come out of his cell." The district court again warned Lynn that "[f]ailure to participate will result in dismissal of the case." Lynn appeared at a telephone hearing in July 2017, but did not focus on this case, instead discussing other cases and the status of his legal materials. At a September 2017 telephone hearing, when the district court denied Lynn's request for a continuance of the evidentiary hearing scheduled that day, Lynn erupted into profanity, explicitly threatening the district judge and others, and did not participate further in the hearing. At the final telephone hearing in January 2018, Lynn appeared but "refused to participate in the hearing, eventually disconnecting from the phone call before any action could be taken by the court."

Although Lynn disputes the district court's characterization of the events in many of the telephone conferences and hearings, he has failed to provide transcripts of those proceedings, so this court presumes that the district court's memorialization of the hearings is accurate. See *Acord v. Porter*, 58 Kan. App. 2d 747, 779, 475 P.3d 665 (2020) ("Because [the appellant] failed to provide us with a transcript of the hearing at which the district court announced its ruling . . . , we presume that the district court's action was valid and that it made the necessary findings to support its decision."), *rev. denied* 312 Kan. 890 (2021). Nor is there any evidence in the record that shows the district court's decision to dismiss Lynn's case for failure to prosecute was based on an error of law,

16

based on an error of fact, or was arbitrary, fanciful, or unreasonable. After repeatedly warning Lynn that a failure to participate in proceedings might lead to dismissal, Lynn continued to engage in behavior that essentially halted progression of the case. As a result, the district court dismissed the case for failure to prosecute. Given the record on appeal, this was not an abuse of discretion.

*Was the presiding judge biased and prejudiced in the defendant's favor, thereby requiring his recusal?*

Next, Lynn argues that Judge Sundby was not impartial, was biased in the defendants' favor, and denied Lynn his constitutional rights under the First and Fourteenth Amendments to due process, equal protection of the law, and redress for actionable wrongs. Although Lynn presents broad-ranging arguments, the crux appears to be that Judge Sundby erred by refusing to recuse himself. The defendants interpret Lynn's arguments on this issue similarly and respond that Judge Sundby had no duty to recuse himself, Lynn's repeated requests for recusal stemmed from unsupported conclusions and speculation, and no reasonable person would doubt Judge Sundby's impartiality.

"Disqualification of a judge is appropriate when the circumstances and facts of the case 'create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself [or herself], or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances.'" *State v. Schaeffer*, 295 Kan. 872, 876, 286 P.3d 889 (2012) (quoting *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 [1984]).

"We have employed a two-part test in deciding whether to vacate a judgment because of a judge's failure to recuse: (1) Was the judge required to recuse himself or herself under the Code of Judicial Conduct . . . before making the decision at issue; and (2), if so, was there actual bias or prejudice that warrants setting the decision aside?" *Subway Restaurants, Inc. v. Kessler*, 266 Kan. 433, 441-42, 970 P.2d 526 (1998).

17

Lynn contends that Judge Sundby repeatedly refused to comply with Kansas Supreme Court rules for timeliness and the efficient, prompt administration of justice. He argues that "the appearances of bias [and] prejudice against Appellant by the [district judge] was obvious to all casual observers" and that the dismissal for failure to prosecute also shows bias against Lynn. Generally citing "his research [and] discussions [with] licensed att[orneys]," Lynn broadly labels Judge Sundby's actions "an unprecedent[ed] abuse of authority."

Simply put, these general allegations cannot show that Judge Sundby was required to recuse himself or that Judge Sundby had actual bias or prejudice against Lynn or in the defendants' favor. "It is not the court's responsibility to search through records to determine whether there is sufficient evidence to support a party's claim." *Sheldon v. Khanal*, No. 110,222, 2014 WL 3732012, at *4 (Kan. App. 2014) (unpublished opinion); see *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

In any event, the record on appeal reveals no bias or prejudice on Judge Sundby's part. "'Bias' refers to the judge's mental attitude toward a party to the litigation. Bias and prejudice exist if a judge harbors a 'hostile feeling or spirit of ill will against one of the litigants, or undue friendship or favoritism toward one.' [Citations omitted.]" *State v. Alderson*, 260 Kan. 445, 454, 922 P.2d 435 (1996). Lynn has pointed to nothing in the record on appeal that would cause a reasonable person with knowledge of all the circumstances to have reasonable doubt about Judge Sundby's impartiality. To the contrary, the record on appeal reflects that despite Lynn's often abusive and threatening statements to Judge Sundby and court staff, at no time did Judge Sundby show bias or prejudice in his administration of this case. Thus, Lynn's argument on this point fails.

*Did defense counsel being named as a defendant in the case create a conflict of interest that should have prohibited her from representing the defendants?*

Next, Lynn argues that Price continuing as defense counsel of record when she was a defendant in this lawsuit was an impermissible conflict of interest and that the district court erred by allowing her to do so, which also shows the district court's alleged bias in the defendants' favor. The defendants respond that Price "was never a named defendant in this action" and there is no evidence that she had a conflict of interest. This issue is easily resolved because the defendants are correct: Price was never a defendant.

Lynn started this case in the district court on March 9, 2015. Price entered her appearance as defense counsel in July 2015. Lynn did not seek to name Price as a defendant until his fourth supplemental complaint, which he filed in March 2017 along with a motion seeking leave to file the supplemental complaint. But there is no indication in the record on appeal that the district court ever granted Lynn's motion to file the fourth supplemental complaint. And as the district court pointed out in an order filed after Lynn filed a fifth supplemental complaint, "[a]mendments to a case once responsive pleadings have been filed, can only be permitted with leave of the court." See K.S.A. 2020 Supp. 60-215(a) (stating that when 21 days have passed after service of a responsive pleading or responsive motion a party may later "amend its pleading only with the opposing party's written consent, or the court's leave").

By the time Lynn sought to file his fourth supplemental complaint and name Price as a defendant, more than 21 days had passed since the defendants had filed a responsive pleading to the complaint. Without the court's permission to file, Lynn's proposed fourth supplemental complaint did not affect this case. By the time Lynn asked to file his fourth supplemental complaint and name Price as a defendant, the district court had denied Lynn's request to file a second supplemental complaint and his request to file a "massive

19

supplemental complaint." Because Price was never a defendant to this case, Lynn's arguments that her status as such created a conflict of interest necessarily fail.

*Did the destruction of Lynn's legal files and materials violate his constitutional rights?*

Lynn's fourth issue is difficult to understand. He articulates the following as the issue at hand:

> "Is Appellant Denied His 1st Amendment Rights To meaningful Appellate Review [and] In Turn His 14th Amendment Rights to Due Process [and] The Equal Protection of the Law As A Result Of Defendants Continuing Criminal Seizures [and] Destructions of His Legal Files [and] Materials Of This [and] Other Pending [and] Intended Court Cases [and] His Inability To Replace, [and] Key His Facts To The Record on Appeal by Volume [and] Page Number?"

Yet in the body of his argument, Lynn makes sweeping assertions about being denied access to the courts, he repeats his contentions about the impropriety of the dismissal of his case and of defense counsel's representation of the defendants, he complains about the unconstitutional nature of the destruction of his legal materials, and he asks this court to act to prevent his alleged continuing mistreatment. At one point, he appears to ask this court to adopt a report and recommendation a federal magistrate judge in Michigan issued in 1995 in *Bell v. Johnson*, 308 F.3d 594, 599 (6th Cir. 2002). And although Lynn cites legal authority throughout his argument, he does not fully explain the relevance of that authority or how it relates to his own arguments.

In any event, we will follow the defendants' lead and interpret this issue as an argument "that the dismissal of [Lynn's] action by the district court violated his constitutional rights of access to the court." The defendants respond that Lynn has cited no law or facts to support such an argument and they argue that the record shows Lynn "had ample access to the court."

20

It is well-established that prisoners "retain right of access to the courts." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). And "the right to pursue a remedy for injuries sustained by the tortious act of another is a fundamental constitutional right." *Chelf v. State*, 46 Kan. App. 2d 522, 538, 263 P.3d 852 (2011). However, the "[t]he right of access to the courts is neither absolute nor unconditional." *Holt v. State*, 290 Kan. 491, Syl. ¶ 5, 232 P.3d 848 (2010). And "the right to access the appellate courts is wholly statutory." *State v. McGaugh*, 56 Kan. App. 2d 286, 289, 427 P.3d 978 (2018).

The defendants are correct that Lynn has not persuasively argued that he was denied access to the courts. As discussed in Issue I above, the district court's dismissal of Lynn's case for failure to prosecute was proper. And Lynn does not offer any caselaw or point to any facts in the record on appeal that support a finding that the dismissal under the circumstances present here violated his right to access the court system. Failure to support a point with pertinent authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Lynn also appears in this issue to ask this court to hold that the defendants engaged in erroneous and unconstitutional destruction of his legal materials which made it impossible for him to meaningfully engage in prosecuting his case, thus effectively limiting his ability to access the courts. But the district court held an evidentiary hearing on the status of Lynn's legal materials and determined that no evidence showed that his legal materials were destroyed or were being unnecessarily confiscated or withheld from him. Lynn neither acknowledges nor challenges this finding, and a review of the hearing shows that the district court's finding was amply supported by the evidence presented to it. As a result, Lynn's argument that he was denied access to the courts fails.

*Do the filing restrictions imposed on Lynn apply to actions in which he seeks habeas corpus relief under K.S.A. 60-1501 or K.S.A. 60-1507?*

Understanding Lynn's issue requires more background information. In the mid-to-late 1990s, the Johnson County District Court issued a permanent injunction that placed filing restrictions on Lynn, requiring him to file an application and other documents as a threshold requirement for leave to file petitions or pleadings other than a notice of appeal. *Lynn I*, 26 Kan. App. 2d at 81. Upon receiving the application packet, the administrative judge or his or her designee will determine whether the petition or pleading is duplicative, frivolous, or lacking in merit. 26 Kan. App. 2d at 81. If it is not and the application complies with the requirements listed above, only then is Lynn granted leave to file it. 26 Kan. App. 2d at 81. Lynn appealed the injunction and this court affirmed; the Kansas Supreme Court denied review. 26 Kan. App. 2d at 79.

In his final issue in this appeal, Lynn asks this court to determine whether these filing restrictions "apply to Appellant's State [and] Federal Constitutional Rights to File [and] Prosecute A Petition For Writ of Habeas Corpus Per KSA 60-1501 [and] KSA 60-1507." In reply, the defendants argue that this issue is not properly before this court because (1) the restrictions did not prevent Lynn from filing this case and (2) in this case, Lynn did not plead any claims under K.S.A. 60-1501 or K.S.A. 60-1507.

To begin with, this issue is not preserved for appeal because Lynn neither raised it in the district court nor asserts any reason this court should consider it for the first time on appeal. Thus, this court could consider the issue unpreserved and decline to address it. See *In re the Care and Treatment of Snyder*, 308 Kan. 626, 640, 422 P.3d 85 (2018) (holding an issue is "not preserved because [the appellant] raises it for the first time on appeal without invoking an exception to Kansas Supreme Court Rule 6.02[a][5]").

In any event, Lynn's claim lacks merit. As the State argues, the filing restrictions did not prevent Lynn from filing this case, nor does this case include a request for habeas relief under K.S.A. 60-1501 or K.S.A. 60-1507. In his argument on this issue, the sole instance Lynn identifies as involving the filing restrictions being improperly applied to prevent him from pursuing claims under K.S.A. 60-1501 or K.S.A. 60-1507 occurred in a case he tried to file in Reno County. Any challenge to that case should have been raised in an appeal from that case. Cf. *State v. Lynn*, No. 106,922, 2012 WL 4937468, at *1 (Kan. App. 2012) (unpublished opinion) (considering an appeal from a "district court's order directing the clerk of the district court not to file Lynn's submitted motion due to Lynn's failure to comply with the filing restrictions").

Because the applicability of the filing restrictions to petitions including requests for relief under K.S.A. 60-1501 or K.S.A. 60-1507 does not affect this case, any opinion this court could offer on that interaction would be advisory only. "'The judicial power granted by Article 3 of the Kansas Constitution does not include the power to give advisory opinions. A Kansas court issuing an advisory opinion would violate the separation of powers doctrine by exceeding its constitutional authority.'" *State ex rel. Schmidt v. Kelly*, 309 Kan. 887, 893, 441 P.3d 67 (2019) (quoting *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 898, 179 P.3d 366 [2008]). Lynn's final claim about filing restrictions fails on procedural grounds and on the merits.

Affirmed.

23